UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER O'GRADY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17CV02094 AGF |
| | ) | |
| NANCY A. BERRYHILL, Deputy | ) | |
| Commissioner for Operations, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Jennifer O'Grady was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner will be reversed and the case remanded for further proceedings.

## BACKGROUND

Plaintiff, who was born on December 8, 1975, filed her application for disability insurance benefits on February 19, 2014 (at the age of 37), alleging disability as of August 5, 2013, due to anxiety, agoraphobia, depression, and migraine headaches. After Plaintiff's application was denied at the initial administrative level, a hearing was held before an Administrative Law Judge ("ALJ") on January 26, 2018, at which Petitioner and a vocational expert ("VE") testified. By decision dated April 27, 2016, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of work at

all exertional levels with certain nonexertional limitations. Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on June 2, 2017. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence in the record as a whole. More specifically, Plaintiff argues that the ALJ erred in rejecting the opinion of Plaintiff's treating psychologist, Katie Boyd, Psy.D., an opinion that supported Plaintiff's testimony of an inability to leave her house most days; failing to explain the weight given to the opinion of an examining consulting psychologist, Lisa McGrath, Ph.D.; and giving significant weight to the opinion of a non-examining consulting psychologist, Mark Altomari, Ph.D. Plaintiff also argues that it can be seen from the treatment notes of Plaintiff's treating psychiatrist, Jyothi Mandava, M.D., that Plaintiff cannot engage in even simple work on a regular basis in the workplace. Plaintiff asks that the decision of the ALJ be reversed and benefits be awarded, or in the alternative that the matter be remanded for further proceedings.

Defendant argues that the ALJ's decision is supported by substantial evidence, including medical opinion evidence that the ALJ properly weighed, Plaintiff's daily activities, "the relatively benign clinical observations in the record," and Plaintiff's receipt of "conservative treatment." ECF No. 20.

**Agency Records, Medical Records, and ALJ's Decision**

The Court adopts the facts set forth in Plaintiff's Statement of Uncontroverted Facts

(ECF No. 15-1), Defendant's Statement of Additional Material Facts (ECF No. 20-2), and Plaintiff's Supplemental Statement of Uncontroverted Material Facts (ECF No. 21-1). Together, these facts provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse . . . merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to

3

determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments. If an impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform her past relevant work.

If the claimant cannot perform her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant's nonexertional impairments significantly limit the claimant's RFC to perform the full range of work listed in the Commissioner's regulations, the ALJ must produce testimony by a VE, or other similar evidence, to meet the step-five burden. *Id*.

**The ALJ's RFC Determination**

Here, the ALJ determined that Plaintiff had the RFC to

perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant must have no exposure to unprotected heights or moving machinery; is restricted to simple, repetitive and routine work tasks; can make simple workplace judgments; can occasionally interact with the public; can frequently interact with co-workers

and supervisors and can never perform work at a production rate pace, or meet strict quota requirements. However, the claimant can meet end-of-day goals.

Tr. 23. The VE testified that there were jobs in significant numbers in the economy that a person with such an RFC could perform.

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id*. Here, the Court does not believe that the ALJ's RFC determination is supported by sufficient medical evidence.

The record shows that Plaintiff saw Dr. Boyd, her treating psychologist, six times from November 2013 to February 2014. At the first visit, on November 6, 2013, Plaintiff reported that she had a "breakdown" in August 2013, and that she has been on leave from work since that time; Dr. Boyd diagnosed Plaintiff with a Global Assessment of Functioning ("GAF") score of 60.[1] On May 26, 2015, Dr. Boyd completed a Medical Assessment of Ability to Do Work-Related Activities – Mental form. She stated that as a therapist and not an evaluator, she (Dr. Boyd) could not answer the questions on the form

---

1    A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. Diagnostic & Statistical Manual of Mental Disorders (4th ed.) (DSM-IV) at 32. GAF scores of 51-60 indicate "moderate" impairment in social, occupational, or school functioning; scores of 61-70 indicate "mild" impairment in these functional areas.

asking about Plaintiff's work-related abilities, but that in general, Plaintiff experienced anxiety, insomnia, and agoraphobia that would "make it difficult to perform work duties or attend." *Id*. at 328-29.

The ALJ gave Dr. Boyd's GAF determination "significant weight." However, the ALJ gave the opinion contained in Dr. Boyd's assessment form no weight because the form was incomplete and offered no actual functional limitations, and Dr. Boyd was a therapist and not an evaluative source. The ALJ noted that despite the claimant's severe subjective complaints, there were no recorded emergency room visits or hospitalizations for anxiety or depression, and her mental status examinations reflected no severe issues of cognition or function. *Id*. at 25.

On September 8, 2015, Dr. McGrath conducted a consultative examination to evaluate Plaintiff's psychological functioning. In her written report, Dr. McGrath noted that Plaintiff had subjective complaints of severe anxiety, emotional distress, and impaired social function, making her unable to work. Standardized tests suggested a composite IQ of 100, in the average range, and a profile of hopelessness, helplessness, and being easily overwhelmed. Dr. McGrath wrote that Plaintiff was "anxious, easily agitated and distraught with frequent nightmares. Her functioning is characterized by a high degree of chronic stimulus overload coupled with recent acute demands that overwhelm her ability to cope affectively." *Id*. at 344. Dr. McGrath classified the testing profile as a "cry of help" and concluded that Plaintiff would benefit from behavioral therapy for what Dr. McGrath described as untreated childhood and adult abuse.

After summarizing Dr. McGrath's report, and without explaining the weight the ALJ accorded it, the ALJ stated as follows:

> The evidence as a whole suggests that [Plaintiff] has improved with the use of medications and therapy, demonstrated by the fact that she has not required hospitalization for depression or anxiety and has been noted to have adequate function in her mental status examinations.

Tr. 25-26.

The ALJ found that the April 8, 2014 opinions of non-examining consulting psychologist Dr. Altomari were deserving of "significant weight." Dr. Altomari's opinions are those recorded on the Disability Determination Explanation form generated in the context of the initial denial of Plaintiff's application for Social Security disability insurance benefits. Dr. Altomari opined that Plaintiff's anxiety disorder resulted in mild restrictions of activities of daily living and maintaining social functioning; and moderate restrictions in maintaining concentration, persistence, and pace. He considered Plaintiff's reported limitations in functioning "generally credible" and wrote that Plaintiff's "statements regarding symptoms considering the total medical and non medical evidence in file," were "Fully Credible." *Id*. at 74, 75.

Plaintiff's limitations in functioning as reported on her Function Report, which Dr. Altomari considered credible, were as follows: she watched TV or scrolled through Facebook on her phone most of the day unless she had a doctor's appointment. On some rare "good days," she could cook simple dinners like hamburgers and fries. She had difficulty sleeping and often wore the same clothes several days in a row. She only went

7

out when she had a doctor's appointment (weekly or every other week) because she was afraid of having a panic attack. She was able to drive, but could only drive accompanied by certain people, like her husband. She no longer spent time with friends because she got anxious around people. She was "afraid of everything," cried all the time, and did not want to leave the house or be alone. She loaded the dishwasher and folded laundry, and could pay bills, count change, handle a savings account, and use a checkbook. *Id*. at 191-98.

However, in the section of the form asking Dr. Altomari to assess Plaintiff's RFC, he wrote that she was not significantly limited or only moderately limited in most areas of work-related functioning, including the ability to maintain regular attendance and be punctual within customary tolerances, and the ability to work in coordination with or in proximity to others. He also opined that Plaintiff had no social interaction limitations. *Id*. 70-78.

The reasons given by the ALJ for according Dr. Altomari's RFC opinion significant weight was that it "reflect[ed] the moderate limitations found by treating providers Dr. Boyd and Dr. Mandava," and Plaintiff had "the ability to do household finances, and chores without significant interference with her ability to concentrate and persist in tasks." *Id*. at 27.

Dr. Mandava's treatment notes in the record date from October 2013 through February 10, 2015. On October 31, 2013, Plaintiff was noted to be tearful and was diagnosed with major depressive disorder, generalized anxiety disorder, and panic

8

disorder.  She was treated with Lexapro.  On January 8, 2014, Dr. Mandava noted a poor response to antidepressants, difficulty functioning, and insomnia.  Dr. Mandava documented Plaintiff's complaint that "even doing ADL [activities of daily living] is hard" and that Plaintiff was not working or leaving home alone.  *Id*. at 318.  On February 19, 2014, Dr. Mandava noted that Plaintiff had treatment resistant depression and was not getting better on her anti-depressant medications.  In April, May, and July 2014, major depressive disorder, generalized anxiety disorder, and insomnia were again noted.

On October 7, 2014, Dr. Mandava noted no major improvement and constant anxiety.  Plaintiff was taking Xanax, and Klonopin was added as a medication.  On November 18, 2014, Dr. Mandava stated that Plaintiff did not like Klonopin, as it made her like a zombie.  It was noted that Plaintiff could not drive out of town without someone in the car, avoided leaving home, and was "not functioning."  The last treatment notes in the record from Dr. Mandava are dated February 10, 2015, and state that Plaintiff repeated she still could not drive and had no energy or motivation.

The Court finds the ALJ's reliance on Dr. Altomari's April 8, 2014, opinions problematic for several reasons.  First, the Court disagrees with the ALJ's determination that Dr. Altomari's opinions "reflect the moderate limitations found by treating providers Dr. Boyd and Dr. Mandava."  Dr. Altomari's opinions predate a significant portion of Dr. Mandava's treatment notes, in which Dr. Mandava states that Plaintiff was "not functioning."  Even the treatment notes dated before April 8, 2014 indicate severe anxiety and an inability to go out alone.  Although Dr. Boyd's GAF of 60 appears consistent with

9

Dr. Altomari's opinions of moderate limitations, it is not consistent with his opinion of no significant limitations. Nor does Dr. Altomari's opinion reflect Dr. Boyd's statement that Plaintiff's anxiety and agoraphobia would make it difficult to perform work duties or attend work.

Second, Dr. Altomari's April 8, 2014 report contains internal inconsistencies. The Court is hard pressed to see how, accepting Plaintiff's reported limitations in functioning as fully credible, it could be said that she had no significant limitations in many areas of work-related functioning, including the ability to maintain regular attendance, be punctual within customary tolerances, and work in coordination with others.

Third, Dr. Altomari's opinions are not consistent with Dr. McGrath's September 8, 2015 evaluation. Although the ALJ was entitled to favor one medical opinion over another, even that of a non-examining consultant over that of an examining consultant, *see, e.g.*, *Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016), here the ALJ provided no reason for doing so, nor does the Court discern any. In addition, there is an absence of evidence that Plaintiff's condition improved with medication or therapy.

In sum, the Court concludes that the ALJ's decision is not supported by substantial evidence in the record as a whole. "Usually when a claimant was improperly denied benefits, the case is remanded to the ALJ for further administrative proceedings. Where the record shows overwhelming support for a finding of disability, however, the court may eschew remand and direct that benefits be granted." *Hess v. Colvin*, No. 4:14CV1593 CDP, 2015 WL 5568056, at *13 (E.D. Mo. Sept. 22, 2015) (citations omitted). Here the

Court cannot say that the record overwhelmingly supports a finding of disability. Thus, the Court will reverse the Commissioner's decision and remand the case for further proceedings. On remand, the ALJ should appropriately review and re-evaluate the current evidentiary record, and consider ordering consultative examinations to assist in determining Plaintiff's entitlement to disability benefits. *See id*.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner in denying benefits is **REVERSED** and the action is **REMANDED** for further proceedings consistent with the above.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 29th day of June, 2018